UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN E. VILLATA SALAZAR, | Case No. 2:25-cv-05473-VBF-MAR |
| Plaintiff, | MEMORANDUM AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| TIMOTHY ROBBINS ET AL, | |
| Defendants. | |

## I.

## **INTRODUCTION**

On June 18, 2025, the Court granted Petitioner's application for a temporary restraining order, ordering that Respondents (1) release Petitioner from custody; (2) refrain from re-arresting him unless and until he is afforded a hearing before a neutral adjudicator on whether a change in custody is justified; and (3) refrain from sending him to any place outside of the United States. ECF Docket No. ("Dkt.") 12. The Court ordered the parties to file supplemental briefing on the issue of whether the Court should also grant a preliminary injunction. Id. The parties have since filed their briefs. Dkts. 14 ("Opp."), 15 ("Reply"). For the reasons discussed below, the Court **GRANTS** Petitioner's motion for a preliminary injunction.

///

///

## II.

## **BACKGROUND**

The Court described Petitioner's allegations and the procedural history of this action in its previous order:

> Petitioner was previously detained by Immigration and Customs Enforcement ("ICE") from September 18, 2020 until February 3, 2022, when ICE released him on bond pursuant to Fraihat v. ICE, 445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2022). Dkt. 1 ("Pet.") ¶ 4. ICE determined that Petitioner had health conditions that placed him at heightened risk of severe illness and death if he contracted the COVID-19 virus. Id., Ex. B. Upon his release, ICE installed an ankle monitor and enrolled Petitioner in the Intensive Supervision Appearance Program ("ISAP"). Id.
>
> Petitioner reported to the ICE office in downtown Los Angeles for forty consecutive months without issue, all while continuing to litigate his removal proceedings. Id. ¶¶ 6–7. On February 3, 2025, the Board of Immigration Appeals ("BIA") issued an order staying the removal while the BIA adjudicates Petitioner's pending motion to reopen his application for asylum, withholding, and protection under the Convention Against Torture. Id.
>
> On June 13, 2025, Petitioner received a message from ISAP instructing him to report to the ICE office in Camarillo on June 14 or June 15. Id. ¶ 8, Ex. E. ISAP had sent similar messages to dozens of noncitizens on June 6, resulting in their incarceration when they appeared on June 7 and June 8. Id. ¶ 9; Immigrants at ICE check-ins detained, held in basement of federal building in Los Angeles, some overnight, CBS News (June 7, 2025), https://www.cbsnews.com/news/immigrants-at-icecheck-ins-detained-and-held-in-basement-of-federal-building-in-los-angeles/; They followed the government's rules. ICE held them anyway, LAist (June 11, 2025), https://laist.com/news/politics/ice-raids-los-angeles-family-detained. Just like those individuals, Petitioner was detained when he reported to the ICE office as instructed on June 14, 2025. Pet. ¶ 14. ICE officers never articulated that Petitioner was a flight risk, was a danger to his community, or had violated a condition of release—they only told him that he was going to be detained because it is "what President Trump wants." Id.
>
> Attempts to locate Petitioner were initially unsuccessful, but by 8:36 P.M. on June 16, the Department of Homeland Security ("DHS") inmate

locator stated Petitioner's location is "TX 79934." Id. ¶¶ 16–17, Ex. D. The page directed family members and legal representatives to contact the ICE office in Los Angeles. Id. Based on this information, Petitioner's counsel believes that Petitioner is in the custody of the Los Angeles ICE office but may physically be located at the ICE detention center in El Paso, where other individuals have been sent out of the country within days of their arrival. Id.; Dkt. 2-6, Declaration of Kari Hong ("Hong Decl.") ¶ 12.

On June 16, 2025, Petitioner filed the instant ex parte application along with a petition for writ of habeas corpus. Dkt. 2. Petitioner seeks an order "enjoining the government from (1) continuing his unlawful custody, (2) prohibiting the government to re-arrest him at any future time, unless and until he first receives a hearing before a neutral adjudicator, as demanded by the Constitution; (3) prohibiting Respondents from causing [him] to be removed or taken out of the United States, in violation of the February 3, 2025 [BIA] Order and nation-wide injunction set forth in D.V.D. v. U.S. Dep't of Homeland Sec., No. CV 25-10676-BEM, 2025 WL 1142968, at *19 (D. Mass. Apr. 18, 2025). Respondents filed an opposition on June 18, 2025. Dkt. 9[.]

Dkt. 12 at 1–3.

In its order granting a temporary restraining order, the Court concluded as follows: (1) "given the weight of authority holding that due process requires that a noncitizen released from ICE custody must receive a hearing before being redetained…Petitioner's allegations are sufficient to establish at least serious questions going toward the merits of his claim" (id. at 5–7); (2) Petitioner established he was likely to suffer irreparable injury in the form of "[i]mminent and potentially permanent removal" as well as the mere "potential for unlawful ICE detention" (id. at 7–8); and (3) the balance of equities and public interest tipped sharply in Petitioner's favor because he had been released for over three years without incident, he is the sole caretaker for his cancer-stricken wife, and counsel believed he had been transferred to a facility where deportations occur quickly (id. at 8–9). Accordingly, the Court found that the Rule 65 factors weighed in favor of the imposition of a temporary restraining order and ordered that "Respondents (1) release Petitioner from

1 custody; (2) refrain from re-arresting him unless and until he is afforded a hearing
2 before a neutral adjudicator on whether a change in custody is justified; and (3) refrain
3 from sending him to any place outside of the United States.". Id. at 9–10.  The Court
4 also ordered supplemental briefing from the parties on the issue of whether the Court
5 should issue a preliminary injunction for the duration of the litigation.  Id.

6       Pursuant to the Court's order, Respondents filed their opposition to the
7 motion for a preliminary injunction on July 9, 2025.  Dkt. 14.  Respondents'
8 opposition primarily addresses the issue of whether Petitioner has sufficiently
9 demonstrated a likelihood of success on the merits of his claim.   Petitioner filed their
10 reply on July 16, 2025.  Dkt. 15.  Petitioner's Reply raises critical information that was
11 previously unbeknownst to counsel, Respondents, or this Court:  Petitioner was,
12 allegedly, a member of the recently-settled class action in Roman v. Mayokas, 20-cv-
13 00768-TJH-PVC.  Reply at 3.  The settlement agreement in that case prevents
14 Respondents from rearresting class members unless "(1) he engaged in pre- or post-
15 release custody that indicates that  he "is a threat to national security and/or public
16 security"; (2) has violated any release condition that establishes he is a flight risk, fails
17 to report to any ICE appointment, fails to report to any immigration hearing, or has
18 been arrested for new criminal conduct that constitutes an enforcement priority under
19 the September 20, 2021 Mayorkas Memorandum; or (3) that Respondents are
20 executing a final order of removal. See Dkt. 15-2, Exhibit 2 to Reply ("Roman
21 Settlement"), Section III.A & Section III.B.

22       On July 17, 2025, Petitioner filed a sur-reply "confirming" that Petitioner is a
23 member of the Roman class.  Dkt. 16.  On the same day, Respondents filed
24 objections, arguing that the Court should strike Petitioner's reply for raising new
25 arguments that could have been raised earlier and strike Petitioner's sur-reply for
26 being unauthorized by the Court.  Dkt. 17.   Respondents also argue that Petitioner is
27 not a member of the Roman class, that the Court would not have jurisdiction to
28

4

enforce the settlement, and that the terms of the settlement do not apply here, in any case. Id.

## III.

## DISCUSSION

**A.    APPLICABLE LAW**

Federal Rule of Civil Procedure 65 ("Rule 65") governs the issuance of temporary restraining orders and preliminary injunctions, and the same standards apply to both. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 & n.7 (9th Cir. 2001). A party seeking relief under Rule 65 must show "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 982 (9th Cir. 2010) (citing Winter, 555 U.S. at 24).

A "preliminary injunction is an 'extraordinary and drastic remedy.'" Munaf v. Geren, 553 U.S. 674, 689 (2008). As a result, the party seeking the injunction must present evidence sufficient to clearly carry his burden of persuasion on each requirement. Towery v. Brewer, 672 F.3d 650, 657 (9th Cir. 2012) (citations omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (explaining that a preliminary injunction can issue only on "a clear showing that the plaintiff is entitled to such relief").

The Ninth Circuit balances these factors using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another," provided that the plaintiff still makes a showing on all four prongs. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011). For example, "serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also

1 shows that there is a likelihood of irreparable injury and that the injunction is in the
2 public interest." Id. at 1135 (emphasis added).

3 **B.    DISCUSSION**

4     As noted above, Respondents do not address the Court's previous findings on
5 the irreparable harm or balance of equities factors in their supplemental briefing. See
6 Opp. Accordingly, for the same reasons discussed in the Court's previous order
7 granting a temporary restraining order, the Court finds that Petitioner has
8 demonstrated: (1) a grave risk of irreparable harm in the form of potential ICE
9 detention and deportation; and (2) that the balance of equities and the public interest
10 tips sharply in his favor. See Dkt. 12 at 7–9.

11     The merits factor is closer. In its previous order, the Court discussed the
12 myriad caselaw holding that due process entitles noncitizens to a "pre-deprivation
13 hearing" before they are re-detained after being released from ICE custody on bond;
14 at this hearing, the government must show a "material change in circumstance" to
15 justify re-detention. Id. at 5–7. Like it did in its prior brief, the government argues
16 that this due process protection does not apply to Petitioner because no immigration
17 judge has actually made an individualized determination that Petitioner should be
18 released on bond; rather, Respondents argue, Petitioner was only "temporarily"
19 released due to the COVID-19 risk in ICE detention as determined by the court in
20 Fraihat v. U.S. Immigr. & Customs Enf't, 445 F. Supp. 3d 709 (C.D. Cal. 2020), order
21 clarified, No. EDCV 19-1546 JGB (SHKX), 2020 WL 6541994 (C.D. Cal. Oct. 7,
22 2020), and rev'd and remanded, 16 F.4th 613 (9th Cir. 2021). Reply at 4–7.
23 Respondents devote their entire supplemental brief to emphasizing this distinction,
24 both rhetorically and by distinguishing the cases the Court cited in its prior order with
25 respect to this fact.

26     However, the Court already acknowledged this distinction in its prior order.
27 And yet, the Court also noted that the government had failed to cite a single case that
28 supports their position that this fact necessarily leads to the conclusion that Petitioner

6

1  is not entitled to a hearing before being re-detained.  Indeed, in their Reply, the
2  government only cites a single, inapposite case to support their proposition—Black v.
3  Decker, 103 F.4th 133, 138 (2d Cir. 2024).
4       In Black, the second circuit found that two ICE detainees were entitled to
5  bond hearings after their detentions had become unreasonably prolonged.  Id. at 137–
6  138.  In a footnote, the court noted that, after the district court denied him relief, one
7  of the detainees, G.M., had been released pursuant to the injunction in Fraihat.  Id. at
8  138 n.1.  Though it did not appear that ICE had re-detinned G.M., the court
9  nonetheless concluded that their habeas petition presented a live controversy because
10 ICE was "no langer barred by [the Fraihat] injunction," section 1226(c) "directs the
11 detention of noncitizens in G.M.'s position," and because ICE had not "disclaimed its
12 intent or the requirement to detain him."  Id.  The Court did not consider or decide
13 any question related to the one before this Court: whether a noncitizen who is
14 released from ICE custody is determined to a pre-deprivation hearing even if they
15 were not released pursuant to a typical individualized bond hearing.  Rather, the Black
16 court only cited ICE's statutory entitlement to re-detain G.M. in a passing footnote to
17 justify their conclusion that G.M.'s petition had not become moot.  The Court notes
18 that this statutory mandate is present in many cases where a noncitizen is nonetheless
19 entitled to a bond hearing.  In fact, in Black, the Court ultimately concluded that due
20 process G.M. entitled to a bond determination, albeit for an entirely different reason
21 than the one at issue here.
22      Indeed, even though Respondents make a reasonable logical argument for why
23 the protections established in Matter of Sugay, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)
24 and its progeny should not apply here, Petitioner has made at least an equally
25 reasonable argument for why it should still apply—namely, that, like noncitizens who
26 have been released after a favorable individualized bond determination, Petitioner has
27 demonstrated for the past three years on release that he is not a danger to the
28 community or a flight risk, and therefore should not be re-detained absent some

7

1 change in circumstance that would negate the years of actual proof that Petitioner
2 does not need to be detained.  Ultimately, given the wealth of caselaw affirming that
3 due process requires a pre-deprivation hearing in similar circumstances, the dearth of
4 caselaw indicating that a hearing is not required, and the fact that there are reasonable
5 arguments on either side, the Court finds that Petitioner has at least shown "serious
6 questions going to the merits."  In light of the fact that the risk of irreparable harm
7 and balance of equities factors tip sharply in Petitioner's favor, the Court concludes
8 that, under the Ninth Circuit's sliding scale approach, Petitioner has established that
9 he is entitled to a preliminary injunction.[1]

10    Finally, with respect to the issue of a security bond under Rule 65(c), "Rule
11 65(c) invests the district court with discretion as to the amount of security required, if
12 any."  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original;
13 cleaned up). "[T]he district court may dispense with the filing of a bond when it
14 concludes there is no realistic likelihood of harm to the defendant from enjoining his
15 or her conduct."  Id.  While Respondents have proposed a bond in the amount of
16 $1000, they do not justify their request with any sort of evidence or even an
17 explanation as to the potential harm the government may suffer from the effects of
18 this injunction.  In fact, if anything, it seems as if the end result of this injunction—
19 irrespective of the ultimate result of the petition—will likely be to save the
20 government the costs of detaining Petitioner for an indeterminate amount of time

---

[1] The Court notes that it has concluded that Petitioner is entitled to a preliminary injunction without considering either of his reply or sur-reply, and therefore the outcome of this order would not change regardless of whether the Court would strike either filing.  However, Petitioner does raise a new, critical fact in these filings: that Petitioner may be a member of the Roman class, and therefore the settlement in that case may provide another reason to prevent his re-detention.  The Court finds that this issue would be most appropriately addressed with significant briefing and thus declines to address it here.  Indeed, to the extent Respondents complain about the fact that Petitioner raised this issue in his Reply, Petitioner has also requested to file an amended petition incorporating these new allegations.  Dkts. 13 (joint stipulation to amend briefing schedule and allow filing of a first amended petition); 18 (motion to file amended habeas petition).  Respondents previously did not object to this request.  See Dkt. 13.

and/or transporting him to different facilities within the country.  Accordingly, the Court finds it appropriate to issue a preliminary injunction without the requirement of a security bond.

## IV.
## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Plaintiffs have made a sufficient showing on the four Winter factors to warrant the imposition of a preliminary injunction.

**IT IS THEREFORE ORDERED THAT** Petitioner's motion for a preliminary injunction is **GRANTED**.  The Court **ORDERS** that, for the pendency of this litigation, Respondents are enjoined from (1) re-arresting or re-detaining Petitioner unless and until he is afforded a hearing before a neutral adjudicator on whether a change in custody is justified by a material change in circumstances; and (2) sending him to any place outside of the United States.

Dated:  July 28, 2025

/s/ Valerie Baker Fairbank

HONORABLE VALERIE BAKER FAIRBANK
United States District Judge

Presented by:

MARGO A. ROCCONI
United States Magistrate Judge

9